UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLARD MARINE, INC., a California Corporation, and GEM VENTURES LTD., a Delaware Limited Liability Company., <br><br>Plaintiffs, <br><br>v. <br><br>SHANGHAI BREEZE TECHNOLOGY COMPANY, LTD., a Chinese Limited Liability Company, <br><br>Defendant. | Case No.: 25-CV-2907 JLS (BLM) <br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'** *EX PARTE* **MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION** <br><br>(ECF No. 3) |

Presently before the Court is Plaintiffs Willard Marine, Inc.'s and GEM Ventures, LTD.'s Motion for Temporary Restraining Order ("TRO") Enjoining Defendant Shanghai Breeze Technology Company, LTD's ("Shanghai Breeze") Enforcement of Arbitral Award ("TRO Mot.," ECF No. 3). Plaintiffs filed their TRO Motion without proof of service. *See generally* Docket. Plaintiffs accompanied their TRO with a supporting Memorandum of Points and Authorities (ECF No. 3-1), a Declaration from Plaintiffs' counsel, Joseph Ashby, in Support of Plaintiffs' Motion for Temporary Restraining Order ("Ashby Decl.," ECF No. 3-2), and accompanying Exhibits A through K. The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion for Temporary Retraining Order.

# BACKGROUND

Plaintiff Willard Marine[1] has built specialized boats for the U.S. military as a U.S. Defense contractor for more than sixty years. TRO Mot. at 6. In July 2019, Willard Marine and Shanghai Breeze, a Chinese limited liability company, executed a contract for the sale of two Willard Marine vessels. *Id.* Thereafter, Shanghai Breeze's CEO, Chinese national Ge Song Tao ("Ge"), was arrested in Florida and "charged with making false statements in connection with a contract for the purchase of similar vessels" from another company, triggering an investigation by the Bureau of Industry and Security (BIS). *Id.* at 7. Willard Marine then stopped working on the vessels and ceased communications with Shanghai Breeze. *Id.* Ge pled guilty and was sentenced to over three years in prison. *Id.* Ge and Shanghai Breeze's alleged aim was to "illegally export military-grade combat rubber raiding craft ("CRRC") used by the U.S. Special Operations community to China" to "reverse engineer" them to "mass produce [them] for China's navy." *Id.*

On April 1, 2022, Shanghai Breeze began arbitration proceedings with Willard Marine, before the American Arbitration Association's International Center for Dispute Resolution (ICDR), demanding restitution for the deposits it had made towards the Willard Marine vessels. *Id.* During the arbitration proceedings, BIS placed Ge on its "Denied Persons List" (DPL) and "imposed severe restrictions on Ge and 'any employees, agent or representatives' thereof 'when acting for or on his behalf.'" *Id.* at 7–8 (citing TRO Mot. Ex. H) ("DPL Order"). The DPL Order "bars Ge from 'directly or indirectly participat[ing] in any way in any transaction' that involves items subject to the [Export Control Reform Act, 50 U.S.C. § 4801, and the implementing Export Administration Regulations ("EAR")], *including the Willard Marine vessels*." *Id.* It also "expressly prohibits Ge from '[b]enefitting in any way from any transaction involving any items exported or to be exported' that [are] subject to the EAR." *Id.*

---

[1] Plaintiff GEM Ventures LTD. is the parent company of Willard Marine that Shanghai Breeze also intends to enforce the arbitration award against. TRO Mot. at 6.

|   |   |
|---|---|
| 1 | On December 19, 2023, the ICDR arbitrator found in favor of Shanghai Breeze, and the Orange County Superior Court confirmed the award on April 2, 2024, in the amount of $488,291.50.  TRO Mot. at 8.  After a failed attempt to quash Shanghai Breeze's writ of execution and notice of levy in Superior Court, Plaintiffs filed the current Motion for Temporary Restraining Order (ECF No. 3) seeking the Court to enjoin Shanghai Breeze from "unlawfully attempting to circumvent U.S. export control laws by seeking a money transfer in violation of the DPL Order."  *Id.* at 9. |

## LEGAL STANDARDS

Federal Rule of Civil Procedure 65(b) governs the issuance of a temporary restraining order ("TRO").  The standard for a TRO is identical to the standard for a preliminary injunction.  *Frontline Med. Assocs., Inc. v. Coventry Healthcare Worker's Comp., Inc.*, 620 F. Supp. 2d 1109, 1110 (C.D. Cal. 2009).  A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief" and is "never awarded as of right."  *Id.* at 22, 24.

When a plaintiff has not provided notice of their TRO application to the defendant, Federal Rule of Civil Procedure 65(b)(1) imposes additional requirements.  Namely:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:
>
> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).  "The stringent restrictions imposed . . . by Rule 65[] on the availability of *ex parte* temporary restraining orders reflect the fact that our entire

1 jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 438–39 (1974) (footnote omitted).

"Courts have [thus] recognized very few circumstances justifying the issuance of an *ex parte* TRO." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). "For example, an *ex parte* TRO may be appropriate 'where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing.'" *Id.* (quoting *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984)). Alternatively, "[i]n cases where notice could have been given to the adverse party, courts have recognized 'a very narrow band of cases in which *ex parte* orders are proper because notice to the defendant would render fruitless the further prosecution of the action.'" *Id.* (quoting *Am. Can Co.*, 742 F.2d at 322). Generally speaking, this "narrow band" includes only situations wherein an *ex parte* order is necessary "to preserve evidence or the court's jurisdiction." *Am. Can Co.*, 742 F.2d at 323 n.11 (citing *In re Vuitton et Fils S.A.*, 606 F.2d 1, 3, 5 (2d Cir. 1979) (per curiam)).

## DISCUSSION

Plaintiffs' Motion focuses almost entirely on the *Winter* factors. In so structuring their argument, Plaintiffs ignore "the threshold question that arises anytime a party seeks a restraining order *ex parte*: have Plaintiffs presented an adequate justification for failing to give notice to the Defendant?" *Adobe Sys., Inc. v. S. Sun Prods., Inc.*, 187 F.R.D. 636, 638 (S.D. Cal. 1999). Plaintiffs only mention of notice in the application states that "[t]his motion is being made following the conference of counsel," TRO Mot. at 2, and that Plaintiffs' counsel emailed Defendant's counsel, *id.*, Ashby Decl. at 2. This email, attached as Exhibit K, states in part, "Because Shanghai Breeze continues to seek to evade and defy the decisions of the U.S. Department of Commerce, Willard Marine and GEM Ventures Ltd. will be seeking a determination for the U.S. District Court of the Central District Court of California that Shanghai Breeze cannot receive any funds from a U.S. entity." *Id.*, Ex. K.

At present there is no proof of service or notice to the Defendant of the *ex parte* application for a TRO. *See generally* Docket. Accordingly, the Court "declines to assume any alleged notice was offered, let alone adequate." *See MG Pharmacy LLC v. Cardinal Health 110 LLC*, No. CV-21-01747-PHX-SPL, 2021 WL 6845294, at *1 (D. Ariz. Oct. 15, 2021); *see also Globalization Partners, Inc. v. Layton*, No. 19-cv-01990-BAS-LL, 2019 WL 5268657, at *2 (S.D. Cal. Oct. 16, 2019) ("Because there is no proof of service or other documentation reflecting that service was completed, it is unclear whether Defendant received notice of this proceeding. Hence, for purposes of this Order, the Court assumes Defendant was not provided notice of the instant application and construes Plaintiff's application as a request to issue the TRO without providing notice to Defendant."). Moreover, "service by email does not constitute formal service designed to ensure notice even in the context of an ex parte application for a TRO." *SDLA Courier Serv., Inc. v. City Cap. NY LLC*, No. 2:24-cv-08115-MRA-E, 2024 WL 4868278, at *3 (C.D. Cal. Sept. 24, 2024) (collecting cases).

Plaintiffs argue that they will suffer irreparable harm "from paying a sanctioned entity in violation of the DPL Order due to the inherent liability, business, reputational, and national-security risks posed by effectuating such a payment." TRO Mot. at 15. But to secure a TRO without notice, Plaintiffs' general argument of irreparable harm alone is not enough. Rather, "courts have recognized very few circumstances justifying the issuance of an ex parte TRO." *Reno Air Racing Ass'n,* 452 F.3d at 1131. For example, an unnoticed TRO may be appropriate where notice to the adverse party is impossible due to an unknown identity or difficulties locating them in time for a hearing, *id.*, or where notice is possible, but notice to the defendant "would render fruitless the further prosecution of the action," *id.* (quoting *Am. Can Co.*, 742 F.2d at 322), such that an *ex parte* order is necessary "to preserve evidence or the court's jurisdiction," *Am. Can Co.*, 742 F.2d at 323 n.11 (citation omitted). Here, Plaintiffs have not demonstrated that an *ex parte* TRO is warranted. The Defendant's identity is known, and Plaintiffs have not argued that they would be unavailable for a hearing. Further, Plaintiffs have not pointed to any circumstances where

notice "would render fruitless the further prosecution of the action." *Reno Air Racing Ass'n,* 452 F.3d at 1131 (quoting *Am. Can Co.*, 742 F.2d at 322); *see also Globalization Partners, Inc.*, 2019 WL 5268657, at *2 (holding that the plaintiff's attempted service of the TRO negated any claim that notice would frustrate the prosecution of the plaintiff's case). Plaintiffs cite no authority supporting granting an unnoticed TRO under these circumstances, and their attached email to Defendant's counsel is insufficient.[2] *See generally* TRO Mot. Therefore, the Court **DENIES** Plaintiffs' Motion for Temporary Restraining Order.

## CONCLUSION

In light of the foregoing, the Court:

1. **DENIES** Plaintiffs' *ex parte* Motion for Temporary Restraining Order Enjoining Defendant's Enforcement of Arbitral Award (ECF No. 3).

2. **GRANTS** Plaintiffs' request for an order to show cause why a preliminary injunction should not issue. The Court will construe Plaintiffs' Motion as a Motion for Preliminary Injunction. Plaintiffs **SHALL SERVE** Defendant with a copy of this Order and the Motion (ECF No. 3) and **FILE PROOF OF SERVICE** within two (2) weeks of the date of this Order.

**IT IS SO ORDERED.**

Dated: November 3, 2025

Hon. Janis L. Sammartino
United States District Judge

---

[2] Not only because an email is insufficient in general, *SDLA Courier Serv., Inc*, 2024 WL 4868278, at *3, but also because the email makes no mention of a TRO and names the incorrect court, Central District.